UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

GEORGE McNEIL                                            CIVIL ACTION

VERSUS                                                   NO. 06-7849

JAMIE COHEN ET AL.                                       SECTION "D" (2)

## REPORT AND RECOMMENDATION

Plaintiff, George McNeil, is a prisoner currently incarcerated in the Elayn Hunt Correctional Center in St. Gabriel, Louisiana. He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against New Orleans Police Department Officers Jamie Cohen and Melvin Williams. He alleges that defendants subjected him to excessive force during his arrest in New Orleans on January 1, 2006. He seeks damages and injunctive relief. Record Doc. No. 1 (Complaint at ¶ V).

On December 5, 2006, I conducted a telephone conference in this matter. Participating were plaintiff pro se and Jim Mullaly, counsel for defendants. Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

## THE RECORD

On the date of the conference, plaintiff testified that he was then incarcerated on a charge of possession of crack cocaine, for which he was awaiting trial. He stated that

he was arrested on January 13, 2006, on a trespassing charge, and he was later charged with possession of crack cocaine. He testified that he was convicted on the trespassing charge in January 2006 and sentenced to 30 days in prison.

McNeil confirmed that the claim he asserts in this case is that he was subjected to excessive force by the defendants when they arrested him on January 1, 2006, when he was apprehended by the police officers and brought to a hospital. He said that, on January 1st, he was walking near the intersection of Jackson Avenue and Daneel Street in New Orleans, when he saw "policemen behind me cruising, so I sped up a little to get out of the street, to cross the street, and I came up on an empty lot. On this empty lot, where I usually cut–it's a shortcut–to go to a friend's house of mine, it's dark this time of night, and it sounded like I heard someone calling my name. I didn't stop, being it's dark, to get to the other side of the lot where it's light at. Then I heard someone running behind me. I didn't know what it was. I panicked. When I panicked, I was speeding up to get across the lot, and then I turned around, the police officers headed toward me fast, he knocked me down and pushed me and sprayed me and handcuffed me and they were choking me and kicking me and . . . I was grabbed by the neck and brought to the car."

McNeil testified that the incident occurred at night around 9 or 10 p.m. He said he was brought in the police car to a hospital, which he initially identified as Charity Hospital, although not the old hospital on Tulane Avenue in New Orleans, but possibly

the temporary facility in the suburban Elmwood area.  He testified that he was kept in the hospital overnight and then, at 6, 7 or 8 a.m., a taxi was called for him and he was released from the hospital.

Asked what injuries he suffered in the incident, McNeil testified that his "eyes were burning, my chest was hurting, my eyes were swollen.  I really couldn't see at that time."  He said his eye problems were caused by pepper spray used by the police officers, who also punched him, resulting in bruises on his head, chest and arm and bleeding on the forehead.  McNeil said he received no treatment at the hospital, except that he remained in bed  and was observed.  He stated that the cut on his head did not require stitches and he had no broken bones.  He testified that his eye problems, including the swelling and blurry vision, lasted only a couple of days and that his bruises and the cut on his forehead had also healed within a couple of days.  Asked if he had suffered any other injuries, he said, "no, sir."  McNeil testified that he had no recollection of what care, if any, he had received while confined in the hospital overnight.

Plaintiff stated that his subsequent arrest on trespassing charges was not related to the January 1st incident.  He said his trespassing arrest occurred and was based on an incident about two weeks later, on January 13, 2006, when he was in a hotel waiting for someone when he fell asleep, and people at the hotel called police when they learned that he was not a hotel guest.  McNeil said that when he went to court to plead guilty to

3

trespassing as a result of the January 13th incident, he was informed that he was also being charged with possession of cocaine in connection with the January 1st incident. He said that he was not charged with resisting arrest or battery of a police officer in connection with the January 1, 2006 incident.

McNeil testified that the January 1st incident, from the time the police officers first laid hands on him until he was placed in the police car, lasted "maybe 11 to 15 minutes." Asked to describe what force was used against him, he said, "I was pulled to the ground, I was maced, I was handcuffed, I was kicked in the chest . . . I was choked and drug [sic] to the car. By the time I got my vision back, I was in the police car." McNeil said he began running from the police when he heard footsteps behind him. He said he thought he heard his name called, but he did not stop because it was dark and he was waiting to get to a safe area before he looked. He said he thought the police officers had called his name, but he did not know how they might have known his name and said that perhaps they had called out something else. He said he heard the steps of someone running behind him, so he "sped up," and then a police officer caught up to him and knocked him down.

McNeil said he did not know at the time of his January 1st arrest that he was being charged with possession of cocaine, and he did not learn that those charges were pending till he pled guilty to the unrelated trespassing charge about two weeks later. He said he

was released again in March 2006, but he was picked up again on the same charge in May. He said he was scheduled for trial on the cocaine charge on December 7, 2006. He said he continues to have problems with the vision in his left eye as a result of the incident. He also stated that there were no witnesses to the January 1st incident, other than himself and the two police officers whom he named as defendants.

After the hearing, defense counsel provided plaintiff and the court with copies of plaintiff's medical records from the temporary medical facility in Elmwood. In addition, the court received and reviewed plaintiff's medical records from the Orleans Parish Prison system ("OPP"), where he was being held as a pretrial detainee at the time of the hearing. The OPP records begin in May 2006 and make no reference to any January 1, 2006 hospital visit. The OPP medical records do contain two references concerning an eye inflammation on or about November 14, 2006, eleven months after the alleged pepper spray incident, but only three weeks after the instant lawsuit was filed. These OPP records are a physician's orders dated November 14, 2006, prescribing erythromycin[1] ointment for eye inflammation and a pharmacy services record indicating that the ointment was provided to McNeil by a nurse on that same date. Record Doc. No. 11 (OPP medical records).

---

[1] Erythromycin is an antibiotic used to treat many kinds of infections, including pinkeye. PDRhealth, avail. at http://www.pdrhealth.com/drug_info/rxdrugprofiles/drugs/ery1163.shtml.

The LSU Health Sciences Center (Elmwood) records establish that McNeil was brought by New Orleans police officers to that facility on January 1, 2006. Record Doc. No. 17 (Emergency Department Physician's Patient Record, Triage Records and Continuation Flow Sheet). The records indicate that McNeil exhibited "bizarre behavior" and an "altered mental state." Id. The records further indicate that McNeil reported "eye burning" and that he was "reportedly doing crack." Id. Emergency department drug testing detected both cocaine and benzodiazepines[2] in McNeil's system. Id. (Spirit of Charity EMED Unit, Triage Drugs of Abuse Panel Laboratory Results).

## ANALYSIS

I.   STANDARDS OF REVIEW

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'" Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended). A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th

---

[2]The benzodiazepine class of drugs includes Ativan, Halcion, Librium, Valium, and Xanax. PDRhealth, avail. at http://www.pdrhealth.com/drug_info/nmdrugprofiles/herbaldrugs/102830.shtml. Many of these drugs are used as tranquilizers for short-term relief of anxiety symptoms and/or for treatment of insomnia. Id. at http://www.pdrhealth.com/drug_info/rxdrugprofiles/drugs/hal1192.shtml; http://www.pdrhealth.com/drug_info/rxdrugprofiles/drugs/ati1036.shtml.

Cir. 1994). The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'" Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims. Spears, 766 F.2d at 180. "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990). "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists." Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728 (1992)), and may consider and rely upon documents as

additional evidence, as long as they are properly identified, authentic and reliable. "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents. A defendant may not use medical records to refute a plaintiff's testimony at a Spears hearing." Id. (citing Wilson, 926 F.2d at 482-83; Williams v. Luna, 909 F.2d 121, 124 (5th Cir. 1990)).

After a Spears hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, Jackson v. Vannoy, 49 F.3d 175, 176-77 (5th Cir. 1995); Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." Id. at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." Moore, 976 F.2d at 269. A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2).

In this case, plaintiff's complaint may be dismissed under 28 U.S.C. § 1915(e) either as frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims. Plaintiff's complaint, as amended by his testimony at the <u>Spears</u> hearing, fails to state a claim under the broadest reading.[3]

## II.   EXCESSIVE FORCE

Claims concerning excessive force used during and after an arrest implicate both the Fourth and Fourteenth Amendments. The Fourth Amendment provides a reasonableness standard concerning the use of force. <u>Harper v. Harris County</u>, 21 F.3d 597, 600 (5th Cir. 1994). To succeed on such a claim, plaintiff bears the burden of proving that he was subjected to a use of force that was clearly excessive to the need, and the excessiveness of that need was objectively unreasonable. <u>Id.</u> The test for reasonableness under the Fourth Amendment requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether the suspect was actively resisting arrest or attempting to evade arrest by flight. <u>Graham v. Connor</u>, 490 U.S. 386, 396 (1989). The reasonableness of the particular use

---

[3] Pro se civil rights complaints must be broadly construed, <u>Moore</u>, 30 F.3d at 620, and I have broadly construed the complaint in this case.

of force must be judged from the perspective of a reasonable officer at the scene. Id. The question is whether the officer's actions were objectively reasonable in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation. Id. at 397.

The Fifth Circuit has also noted that, under the Fourteenth Amendment: "[W]e explicitly acknowledge that where a plaintiff's excessive force claim, whether he be a prisoner, arrestee, detainee, or an innocent bystander of tender years, falls outside the specific protections of the Bill of Rights, that plaintiff may still seek redress under the due process clause of the Fourteenth Amendment." Petta v. Rivera, 143 F.3d 895, 911 n.25 (5th Cir. 1998) (citing Graham, 490 U.S. at 395 n.10); accord Flores v. City of Palacios, 381 F.3d 391, 401 (5th Cir. 2004); Gutierrez v. City of San Antonio, 139 F.3d 441, 452 (5th Cir. 1998).

Under the Fourteenth Amendment standard, the court must ask whether defendant's "actions caused [plaintiff] any injury, were grossly disproportionate to the need for action under the circumstances and were inspired by malice rather than merely careless or unwise excess of zeal so that it amounted to an abuse of official power that shocks the conscience." Petta, 143 F.3d at 902 (citing Shillingford v. Holmes, 634 F.2d 263, 265 (5th Cir. 1981) (emphasis added)). The "'extent of injury is one factor' to be considered [along] with 'the need for application of force, the relationship between that

need and the amount of force used' and other factors, . . . [but] the extent of injury is only one relevant factor and cannot be exclusively determinative under the . . . substantive due process approach." Id. at 902 (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)).

McNeil's testimony, accepted as true for present purposes, fails to establish a Fourth Amendment or a Fourteenth Amendment violation. McNeil testified that he was at Jackson Avenue and Daneel Street, a high crime area in New Orleans, after dark. He also testified that he saw a police car traveling behind him, sped up when he saw the police, then ran when someone called to him. The medical records establish that McNeil was under the influence of both cocaine and prescription drugs at the time. A police officer observing the actions of such a person in a high crime area could have reasonably believed that the suspect was fleeing and posed a danger to them and himself. Wyland v. James, 426 F. Supp. 304, 306 (N.D. Tex. 1977). Reasonableness is judged from the perspective of a reasonable police officer at the scene. Graham , 490 U.S. at 396. In this situation, a reasonable officer in a high crime area who observed McNeil fleeing after calling after him could have reasonably concluded that the degree of force employed was required to prevent the suspect from evading them.

McNeil also testified that he suffered from burning in his eyes, bruises on his head, chest and arm, and pain in his chest from being kicked during the events of January 1, 2006. He testified that he was admitted to the LSU Medical Center at Elmwood for

11

observation, did not receive any stitches, and did not suffer any broken bones. Plaintiff's bruises and blurry vision cleared up significantly within a few days. Extent of injury is one factor to be considered in determining whether excessive force has been used against a person. In the instant case, plaintiff's injuries were slight and required only overnight observation. His injuries were the result of running from Officers Cohen and Williams after they called after him. The officers' use of pepper spray and minimal other force in the totality of these circumstances was not excessive.

> Courts have consistently concluded that using pepper spray is reasonable . . . where the plaintiff was either resisting arrest or refusing police requests, such as requests to enter a patrol car or go to the hospital. Furthermore, as a means of imposing force, pepper spray is generally of limited intrusiveness, and it is designed to disable a suspect without causing permanent physical injury. Indeed, pepper spray is a very reasonable alternative to escalating a physical struggle with an arrestee.

Vinyard v. Wilson, 311 F.3d 1340, 1348 (11th Cir. 2002) (quotation and citations omitted).

McNeil's allegations in this case resemble the similar allegations of the plaintiff in Hawthorne v. Sheriff of Broward County, No. 06-11094, 2007 WL 5809 (11th Cir. Jan. 3, 2007), in which the Eleventh Circuit held that the force used was not excessive, when the arresting "officers could not even handcuff [the struggling plaintiff] until he was subdued with pepper spray." Id. at *4; see also Sargent v. Idle, No. 06-1780, 2006 WL 3539221, at *4 (7th Cir. Dec. 8, 2006) (no excessive force when arresting officer sprayed struggling plaintiff with pepper spray as officer "was trying to restore order to what he viewed as a

dangerous situation"); Bing ex rel. Bing v. City of Whitehall, 456 F.3d 555, 569-70 (6th Cir. 2006) (Under Graham's "totality of the circumstances test," police officers' use of pepper gas was reasonable because "Bing posed a serious and immediate threat to others and refused to come out of his house to be arrested."); Lawyer v. City of Council Bluffs, 361 F.3d 1099, 1105 (8th Cir. 2004) (during traffic stop, officer was reasonable in using pepper spray to subdue motorist who refused officer's repeated commands to exit locked vehicle); Wagner v. Bay City, 227 F.3d 316, 324 (5th Cir. 2000) ("nothing about the use of chemical spray or even a choke-hold was objectively . . . unreasonable conduct where the suspect physically resisted arrest")

    As in the cases cited above, McNeil's testimony establishes an appropriate correlation between the need for force and the restrained amount of force used. He testified that, after he heard a call and then began to run, an officer knocked him down and "I was pulled to the ground, I was maced, I was handcuffed." Plaintiff's medical records indicate that his primary diagnosis was "altered mental state." Doctors in the emergency room noted plaintiff's "bizarre behavior" and that he was combative and spitting. McNeil's Triage Drugs of Abuse Panel Laboratory Results show that cocaine and other drugs were in his system. Officers Cohen and Williams acted reasonably under these circumstances, and plaintiff's claim that Officers Cohen and Williams used excessive force must be dismissed.

## RECOMMENDATION

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2).

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. <u>Douglass v. United Servs. Auto Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this __19th__ day of March, 2007.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE